# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BLACKHAWK MINING, LLC,**
**Employer Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-63**        (JCN: 2023001051)

**HAROLD G. WOODS, JR.,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner Blackhawk Mining, LLC ("Blackhawk") appeals the January 16, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Harold G. Woods, Jr., timely filed a response.[1] Blackhawk filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Woods completed an Employees' and Physicians' Report of Occupational Injury form dated June 27, 2022. Mr. Woods indicated that he sustained an injury to his lungs due to his exposure to dry coal dust, magnetite, welding fumes, and flocculant at hazardous levels while working in Blackhawk's prep plant. Rob Keith, M.D., completed the physicians' section and stated that Mr. Woods sustained asthma from inhalation exposure as a direct result of an occupational disease or at least an occupational component.

Mr. Woods submitted MSHA citations given to Blackhawk between December 18, 2017, and April 1, 2021. Blackhawk was given several citations involving the accumulation of coal dust in dangerous amounts, coal covering energized equipment, the coal dust collection system in the prep plant not being maintained, the sampler crusher not being maintained, dangerous amounts of coal dust accumulated in the raw coal MCC room, and the plant sampler not being maintained. It was reported that these conditions exposed miners to burns, smoke inhalation, carbon monoxide poisoning, fire hazards, black lung

---

[1] Blackhawk is represented by T. Jonathan Cook, Esq. Mr. Woods is represented by Guy R. Bucci, Esq., Ashley N. Lynch, Esq., and Otis R. Mann, Jr., Esq.

1

disease, and/or respirable dust hazards. The citations indicated that these conditions were rectified by Blackhawk.

On November 12, 2020, Mohammed Ranavaya, M.D., performed an independent medical evaluation ("IME") of Mr. Woods and issued a report dated November 23, 2020. Mr. Woods presented with dyspnea on exertion and paroxysmal nocturnal dyspnea with gradual worsening. Dr. Ranavaya concluded that Mr. Woods does not suffer from welder's lung or pneumosiderosis.[2] Further, Dr. Ranavaya opined that Mr. Woods does not have any occupational lung disease or any other occupational disease. He indicated that Mr. Woods' bronchial asthma was a naturally occurring disease of ordinary life that the general public is exposed to outside of employment. Further, Dr. Ranavaya opined that Mr. Woods' obesity, poorly controlled hypertension, left-sided congestive heart failure, insulin resistant diabetes, and metabolic syndrome combined to cause his pulmonary complaints.

On June 7, 2021, Maeve MacMurdo, M.D., at the Department of Pulmonary Medicine at the Cleveland Clinic authored a letter regarding Mr. Woods' claim. Based upon Mr. Woods' evaluation and testing, Dr. MacMurdo opined that his symptoms were more likely than not due to asthma triggered by exposures during employment. Dr. MacMurdo noted that work exacerbated asthma was an alternative diagnosis, but Mr. Woods did not have a history of childhood asthma or allergies to suggest a prior history. Dr. MacMurdo confirmed the diagnosis of asthma based on Mr. Woods' positive bronchodilator response and clinical history.

By order dated July 14, 2022, the claim administrator denied Mr. Woods' claim on the basis that he did not prove an occupational injury or disease within the meaning of West Virginia Code § 23-4-1(a) and West Virginia Code § 23-4-1. Mr. Woods protested this order to the Board.

On August 29, 2022, Dominic Gaziano, M.D., authored a letter regarding Mr. Woods' claim. After a review of the Cleveland Clinic Medical Records, the IME report of Dr. Ranavaya, and Mr. Woods' exposure history, Dr. Gaziano opined that Mr. Woods had an asthmatic condition related to his occupation that resulted in a significant chronic lung disease.

Mr. Woods submitted an affidavit of Robert Adkins, M.D., dated November 29, 2022. Dr. Adkins stated that he was Mr. Woods' treating physician from 1980 to 2016, and that he had reviewed the medical records from Madison Medical Group, Boone Memorial Hospital Clinic, and Cleveland Clinic. Dr. Adkins stated that the records showed no

---

[2] The National Institutes of Health defines pneumosiderosis as Welder's lung, usually seen after chronic exposure to iron dust.

indication that Mr. Woods had childhood asthma or any other form of asthma, and he agreed that the diagnosis of occupational asthma was caused by coal dust exposure. Dr. Adkins noted that Mr. Woods suffered from no respiratory problems while he was the treating physician.

Mr. Woods completed an affidavit dated December 12, 2022, in which he stated that the photographs attached to the citations accurately depicted the working conditions at the prep plant. Mr. Woods further indicated that the dust suppression system and/or dust collection system at the prep plant did not work properly at the time of his employment. Mr. Woods also stated that he was exposed to excessive amounts of dry coal mine dust while working in the prep plant.

Mr. Woods also submitted an affidavit of Bobby Moreland dated December 12, 2022. Mr. Moreland indicated that he was the owner and operator of West Virginia Training Academy, LLC, which provided training in all aspects of coal mining health and safety, and that he was employed by MSHA from 1991 to 2008, during which time he conducted underground, surface, and prep plant inspections. After reviewing Blackhawk's citations dated between December 18, 2021, and March 29, 2021, Mr. Moreland opined that the citations and attached photographs showed excessive dry coal mine dust at the prep plant.

George Zaldivar, M.D., performed an evaluation of Mr. Woods at the request of Blackhawk on January 11, 2023, in which he considered whether Mr. Woods had asthma or occupational asthma related to his work in the coal mines. In a report dated January 14, 2023, Dr. Zaldivar indicated that the dust in the coal mine did not constitute a hazard for the development of occupational asthma. Dr. Zaldivar reported that there was no valid breathing test on record upon which an assessment of asthma could be made. Further, he opined that there was no evidence that Mr. Woods suffered from asthma, whether occupational or otherwise.

On December 20, 2023, the OP Board held a hearing. The OP Board testified that the medical records from the time that Mr. Woods was a child up until 2020, revealed no diagnosis of asthma or hyperactive airways disease. The OP Board testified that Mr. Woods does have an asthmatic-type process. Further, the OP Board indicated that Mr. Woods' pulmonary function testing, while not optimal, showed a specific pattern that would be hard to repeat, and that there was an element of obstruction. The OP Board testified that a methacholine challenge was positive and had a 20% change, which demonstrated that there was an asthmatic process. However, the OP Board testified that coal dust is not an allergen that would promote an allergic reaction that would cause asthma.

Mr. Moreland completed an additional affidavit dated January 18, 2024. Mr. Moreland indicated that the citations and attached photographs showed excessive dry coal mine dust, which contained quartz, silica, and other contaminants, was present at

3

Blackhawk's prep plant. Mr. Moreland stated that Mr. Woods was regularly exposed to welding fumes during his employment with Blackhawk.

On February 13, 2024, Michael McCawley, Ph.D., authored a report regarding Mr. Woods' claim.[3] Dr. McCawley indicated that he believed beyond a reasonable doubt that it was possible for someone to develop asthma as a result of their work in coal mining. Dr. McCawley stated that coal mine dust exposure was a mixture of heavy metals such as cadmium, cobalt, and nickel. Further, Dr. McCawley stated that cobalt and welding were associated with the onset of occupational asthma.

On February 23, 2024, Dr. Gaziano authored an additional correspondence regarding Mr. Woods' claim. Dr. Gaziano indicated that Mr. Woods was exposed to coal dust, welding fumes, and other irritants while working for Blackhawk. Further, Dr. Gaziano opined that Mr. Woods was exposed to substances which induced his asthmatic condition, and that his asthma was caused by his occupation as an employee in the mining industry.

On July 23, 2024, Christopher Martin, M.D., performed an IME of Mr. Woods. Dr. Martin indicated Mr. Woods' medical records failed to show any consistent documentation of wheezing, the most common physical examination finding from asthma. Dr. Martin opined that on a clinical basis, Mr. Woods did not fit the profile for asthma. Regarding the imaging evidence, Dr. Martin reported that a high-resolution CT scan showed mild diffuse bronchial wall thickening, which can be seen in patients with asthma, but that the CT showed no bronchiectasis or air-trapping, which would be expected considering Mr. Woods' severe symptoms. Dr. Martin noted that on May 5, 2021, Mr. Woods' nitrous oxide reading was 12.0 ppb, which was within the reference range of 5-20 ppb, and that he would expect a higher nitrous oxide level had Mr. Woods' dyspnea been from poorly controlled severe asthma. Dr. Martin noted that elevations of nitrous oxide occur due to airway inflammation caused by asthma.

On September 12, 2024, Mr. Moreland was deposed regarding Mr. Woods' claim. Mr. Moreland testified that as an MSHA inspector, he had inspected all of the mines that fed into Blackhawk's prep plant as well as the prep plant itself. Mr. Moreland indicated that he reviewed the photographs and citations issued against Blackhawk. Further, Mr. Moreland testified that coal dust could be comprised of rock, glue, foams, chemicals used to clean coal, welding fumes, and metals from rocks such as cobalt, slate, sandstone, and quartz. Mr. Moreland testified that the inhalation of respirable dust can cause black lung, asthma, silicosis, and COPD. Mr. Moreland testified that Mr. Woods was exposed to coal mine dust and welding fumes while employed by Blackhawk, which are very dangerous.

---

[3] Dr. McCawley's report indicates that he has twenty-seven years of experience at the U.S. National Institute for Occupational Safety and Health ("NIOSH") as an industrial hygienist, and that he was appointed to serve on the panel of the National Academies of Medicine, Science and Engineering.

On cross-examination, Mr. Moreland testified that he was not a certified industrial hygienist. According to Mr. Moreland, he was not the inspector who performed the inspections that resulted in citations being issued against Blackhawk, and that since Blackhawk was still operating, he would assume that the cited problems were abated.

By order dated January 16, 2025, the Board reversed the claim administrator's order and held the claim compensable for occupational asthma. The Board found that Mr. Woods established by a preponderance of the evidence that he sustained the occupational disease of asthma in the course of and resulting from his employment. It is from this order that Blackhawk now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Blackhawk argues that the Board was clearly wrong because the medical and scientific evidence does not establish a causal link between the coal mine dust exposure and asthma. Blackhawk also avers that Mr. Woods' medical history contradicts his claim of occupational asthma. Blackhawk asserts that the Board improperly relied on Dr. McCawley's report. Finally, Blackhawk asserts that Mr. Woods did not prove that his condition is directly or proximately caused by workplace exposure. We disagree.

Pursuant to West Virginia Code § 23-4-1(f) (2024),

> a disease is considered to have been incurred in the course of, or to have resulted from, the employment only if it is apparent to the rational mind, upon

5

consideration of all circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as a proximate cause; (4) that it does not come from a hazard to which a workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction[.]

Here, the Board determined that Mr. Woods established, by a preponderance of the evidence, that he sustained the occupational disease of asthma in the course of and resulting from his employment with Blackhawk. As to the six factors in West Virginia Code § 23-4-1(f), the Board found that Mr. Woods' work exposed him to coal dust, magnetite, welding fumes, flocculant, sandstone dust, and other irritants. The Board stated that Mr. Woods' work consisted of but was not limited to welding, cutting, mechanical work, changing oil, greasing, shoveling, and belt examination. The Board noted Mr. Moreland's testimony, in which he stated that respirable dust could be rock, glue, foams, chemicals used to clean coal, welding fumes, and metals from rocks such as cobalt, slate, sandstone, and quartz. Further, the Board found that Drs. MacMurdo, Keith, Gaziano, and Adkins had diagnosed Mr. Woods with occupational asthma due caused by his exposures at work. The Board also noted that the citations issued against Blackhawk stated that some of the mine conditions exposed miners to respirable dust hazards. The Board stated that there is no indication that Mr. Woods was equally exposed to these hazards outside of his employment.

Although Blackhawk asserts that the Board erred in relying on Dr. McCawley's report, the Board specifically found that Dr. McCawley's report indicated that coal dust exposure can cause occupational asthma, and that NIOSH scientifically established that coal mine dust can cause asthma. Further, the Board weighed all of the medical evidence in the record and found that Dr. McCawley's report supported Dr. MacMurdo's diagnosis of occupational asthma. We defer to the Board's credibility determinations and weighing of the evidence. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence. . . .").

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Woods established by a preponderance of the evidence that he sustained the occupational disease of asthma in the course of and resulting from employment while working for

Blackhawk. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order rejecting the claim.

Accordingly, we affirm the Board's January 16, 2025, order.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

7